# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00971-SCT

*KRISTI FULGHAM*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2009 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | R. GREGG MAYER |
| | JAMES W. CRAIG |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 11/05/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     While incarcerated, Kristi Fulgham had access to a cell phone and charger, which she provided to an inmate in the Oktibbeha County Jail. Fulgham subsequently pleaded guilty under a statute that prohibits "any . . . person" from "furnish[ing], attempt[ing] to furnish, or assist[ing] in furnishing to any offender . . . an unauthorized electronic device."[1] She now contends that she pleaded guilty to an unconstitutionally vague statute. Finding the record

---

[1]Miss. Code Ann. § 47-5-193 (Rev. 2004).

needs more development, we remand for an evidentiary hearing on (1) whether Fulgham had notice that a cell phone and charger constitute an "electronic device," and if so, (2) whether they were "unauthorized," and (3) whether law enforcement had definite standards to avoid arbitrary enforcement.

## FACTS

¶2. In August 2004, Fulgham was incarcerated on a charge of capital murder when she was caught allegedly furnishing a cell phone and charger to another inmate. Fulgham pleaded guilty to furnishing an unauthorized electronic device to an inmate. Fulgham was sentenced to eight years.

¶3. Fulgham timely filed a petition for post-conviction relief in the trial court and challenged her guilty plea. Fulgham argued that the statute is unconstitutionally vague, and that she had pleaded guilty to a crime for which she cannot be convicted. She also argued that her counsel was ineffective for failing to challenge the constitutionality of the statute.

¶4. Without a hearing, the trial court issued an order denying post-conviction relief. The court held that she had waived the right to question the statute's constitutionality by pleading guilty, and it found the statute was not unconstitutionally vague.

## DISCUSSION

**I.    Whether Fulgham's claim is procedurally barred.**

¶5. Under Mississippi's Uniform Post-Conviction Collateral Relief (PCR) Act, Fulgham has the right to file a petition for post-conviction relief challenging the constitutionality of

2

the statute under which she was convicted and sentenced.[2]  However, the PCR Act also provides that:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which are capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.[3]

¶6.	Our caselaw clearly establishes that this procedural bar cannot be applied in the face of "errors affecting fundamental rights," because such a violation "is too significant a deprivation of liberty to be subjected to a procedural bar."[4]  And a conviction under an unconstitutionally vague statute violates the Due Process Clause,[5] which we find to be an error affecting a fundamental constitutional right.  If the phrase "unauthorized electronic device" is vague under the Due Process Clause, then the State had no power to bring an indictment charging a violation of Mississippi Code Section 47-5-193.  This Court has ruled that "'[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set

---

[2]Miss. Code Ann. § 99-39-5(1)(c) (Rev. 2007).

[3]Miss. Code Ann. § 99-39-21(1) (Rev. 2007).

[4]*Smith v. State*, 477 So. 2d 191, 195 (Miss. 1985).

[5]*Jones v. City of Meridian*, 552 So. 2d 820, 824 (Miss. 1989); U.S. Const. amend. XIV § 1.

aside even if the conviction was entered pursuant to a counseled plea of guilty.'"[6] Therefore, we except Fulgham's claim from the procedural bar.

## II. Whether Mississippi Code Section 47-5-193 is unconstitutionally vague.

¶7. Fulgham argues that the version of Mississippi Code Section 47-5-193 in force at the time of her guilty plea was facially vague, that is, the vagueness was apparent from the words of the statute.[7] She points to the fact that the statute has been twice amended to include the terms "cell phone" and "charger."[8] Fulgham asserts that the statute is vague for failing to define the phrase "unauthorized electronic device." Last, Fulgham argues that her trial counsel was ineffective for failing to advise her or the court of the statute's alleged vagueness. The State also contends that the statute is not facially vague, and alternatively, that it is not unconstitutional as applied to Fulgham.[9]

¶8. As previously noted, an unconstitutionally vague statute violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.[10] Because there is a strong presumption that a legislative enactment is valid, the party challenging a statute's

---

[6]*Willie v. State*, 738 So. 2d 217, 219 (Miss. 1999) (quoting *Menna v. New York*, 423 U.S. 61, 62, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975)).

[7]*See* Miss. Code Ann. § 47-5-193 (Rev. 2004).

[8]*Compare* Miss. Code Ann. § 47-5-193 (Rev. 2004) *and* Miss. Code Ann. § 47-5-193 (Supp. 2010).

[9]The State also argues that this Court is procedurally barred from considering Fulgham's vagueness argument, because she asserts it for the first time on appeal. We find that Fulgham did raise the vagueness argument in her petition for post-conviction relief before the trial court.

[10]*Jones,* 552 So. 2d at 824.

4

constitutionality must prove his or her case beyond a reasonable doubt.[11] All doubts are resolved in favor of the validity of the statute.[12] The U.S. Supreme Court has ruled that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[13] The Court has ruled that "[t]he test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."[14]

¶9.     As previously noted, Fulgham asserts the statute is facially vague, while the State argues that we should analyze whether the statute is constitutional as applied to Fulgham's conduct. The U.S. Supreme Court's jurisprudence has been rather obscure as to when courts should engage in an as-applied analysis versus a facial analysis when reviewing a statute for vagueness.[15] Furthermore, this Court has used each analysis in separate cases without instruction as to application.[16] So, we set forth some notable decisions by the U.S. Supreme

---

[11]*Edwards v. State*, 800 So. 2d 454, 460 (Miss. 2001).

[12]*Id.* at 461.

[13]*Kolender v. Lawson*, 461 U.S. 352, 357, 102 S. Ct. 1855, 75 L. Ed. 2d 903 (1983).

[14]*Jordan v. De George*, 341 U.S. 223, 231-32, 71 S. Ct. 703, 95 L. Ed. 886 (1951).

[15]Christina Lockwood, *Defining Indefiniteness: Suggested Revisions to the Void for Vagueness Doctrine*, 8 Cardozo Pub. L. Pol'y & Ethics J. 225 (2010).

[16]*Compare* **Mayor & Bd. of Aldermen, City of Clinton v. Welch**, 888 So. 2d 416 (Miss. 2004) (determining statute is facially vague), *with* **Lewis v. State**, 765 So. 2d 493 (Miss. 2000) (determining statute is not vague as applied to defendant's conduct).

Court on this issue and are guided by the Fifth Circuit's interpretation of it. We often defer to the Fifth Circuit's interpretation of federal law but are not bound by it.[17]

¶10. In *U.S. v. National Dairy Products*, the parties challenged a criminal statute "on its face" for vagueness, while the Government argued the statute was constitutional as applied to the alleged conduct.[18] The Court found that a statute must not be examined in the "abstract" but rather "in light of the conduct with which a defendant is charged."[19] The Court noted that it conducts a facial analysis of an allegedly vague statute in cases arising under the First Amendment "because such vagueness may in itself deter constitutionally protected and socially desirable conduct."[20]

¶11. In *Village of Hoffman Estates*, the Court set forth a test governing a facial challenge to an allegedly vague statute.[21] The Court ruled that the "complainant must demonstrate that the law is impermissibly vague in all of its applications" and that "[a] court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."[22] However, the Court noted that "the most important factor affecting the clarity that

---

[17]*Cash Distrib. Co. v. Neely*, 947 So. 2d 286, 294 (Miss. 2007).

[18]*U.S. v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 31-32, 83 S. Ct. 594, 9 L. Ed. 2d 561 (1963).

[19]*Id.* at 33; *see also* *U.S. v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.")

[20]*Nat'l Dairy Prods.*, 372 U.S. at 37.

[21]*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

[22]*Id.* at 495, 497.

6

the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights."[23] If it does, then "a more stringent vagueness test should apply."[24]

¶12. In *Kolender v. Lawson*, the Court used a more stringent vagueness test to strike down an antiloitering statute as being subject to arbitrary enforcement.[25] In that case, the Court found that a facial analysis was appropriate, because the statute potentially suppressed First Amendment liberties and implicated the constitutional right of freedom of movement.[26] And in *City of Chicago v. Morales*, the Court again used a facial analysis and struck down an antiloitering ordinance as vague, reasoning that: (1) the statute contained no *mens rea* element, (2) the statute infringed on a constitutionally protected right, and (3) vagueness permeated the text of the law.[27]

¶13. The Fifth Circuit Court of Appeals has interpreted the Supreme Court's precedent to require the following steps in a vagueness challenge: 1. The court must consider whether the statute affects a constitutional right.[28] 2. If the statute implicates no constitutionally

---

[23]*Id.* at 499.

[24]*Id.*

[25]*Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983).

[26]*Id.* at 358, 361-62.

[27]*City of Chicago v. Morales*, 527 U.S. 41, 55, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (plurality opinion).

[28]*Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 548 (5th Cir. 2008) (If the statute implicates a constitutional right, then the Court must apply a stricter vagueness test, i.e., a facial analysis.).

protected right, the court should consider whether the statute is impermissibly vague in all of its applications, applying the statute to the complainant's conduct *before* considering any hypothetical scenarios.[29] In applying the statute to the facts at hand, the court must consider whether the complainant had notice of what conduct is prohibited and whether law enforcement had definite standards to avoid arbitrary enforcement.[30] "'The same facets of a statute usually raise concerns of both fair notice and adequate enforcement standards. Hence the analysis of these two concerns tends to overlap.'"[31]

¶14. We agree with the Fifth Circuit's interpretation of the vagueness doctrine and apply it to this case. At the time of Fulgham's offense, Mississippi Code Section 47-5-193 provided that:

> It is unlawful for any officer or employee of the department, or any county sheriff's department, of any private correctional facility in this state in which offenders are confined or for any other person to furnish, attempt to furnish, or assist in furnishing to any offender confined in this state any weapon, deadly weapon, *unauthorized electronic device* or contraband item. It is unlawful for any person to take, attempt to take, or assist in taking any weapon, unauthorized electronic device or contraband item on property belonging to the department which is occupied or used by offenders, except as authorized by law.[32]

We note that the statute in effect in 2004 contained no definition for "unauthorized electronic device."

---

[29] *Id.* at 551.

[30] *Id.* at 553.

[31] *Id.* at n.21 (quoting *U.S. v. Gaudreau*, 860 F.2d 357, 359 (10th Cir. 1988)).

[32] Miss. Code Ann. § 47-5-193 (Rev. 2004) (emphasis added).

¶15. First, we must determine whether the statute affects a constitutionally protected right. Fulgham does not argue that the statute affects any constitutional right, and we find that it does not. Therefore, we apply the statute to Fulgham's conduct to determine whether she had notice of what conduct was prohibited and whether law enforcement had definite standards to avoid arbitrary enforcement.[33] This inquiry involves a factual determination for the trial court, which did not hold a hearing on Fulgham's petition for post-conviction relief. And the plea dialogue in this case provides no more information than what is contained in the bare-bones indictment. The record before us is silent as to what was or was not "authorized" and what, if any, notice was given to Fulgham. Therefore, we remand for an evidentiary hearing for the court to determine (1) whether Fulgham had notice that a cell phone and charger constituted an "electronic device," and if so, (2) whether she had notice that they were "unauthorized,"[34] and (3) whether law enforcement had definite standards to avoid arbitrary enforcement. These questions simply cannot be answered based on the sparse record before us.

**CONCLUSION**

¶16. This Court remands for an evidentiary hearing on (1) whether Fulgham had notice that a cell phone and charger constituted an "electronic device," and if so, (2) whether she had notice that they were "unauthorized," and (3) whether law enforcement had definite standards

---

[33]*Roark*, 522 F.3d at 553.

[34]We note that Justice Kitchens is correct in his assertion that the statute does not specify *who* determines whether an electronic device is "unauthorized." But the only reasonable interpretation is that the entity having custody of the inmate determines what is "unauthorized."

to avoid arbitrary enforcement. This inquiry will allow the trial court to determine whether the statute is unconstitutional as applied to Fulgham's conduct and whether relief should be granted.

¶17. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., AND DICKINSON, J., CONCUR. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, CHANDLER AND PIERCE, JJ. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**GRAVES, PRESIDING JUSTICE, DISSENTING:**

¶18. "Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *U.S. v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975). In light of the facts herein, I find that the statute under which Fulgham was prosecuted is valid and, therefore, I respectfully dissent.

¶19. At the time Fulgham was caught furnishing a cell phone and cell-phone charger to another inmate, she too was an inmate.[35] While an inmate does not lose all rights upon being incarcerated, incarceration necessarily entails limitations on the right of inmates to possess property in prison. *Harris v. Forsyth*, 735 F. 2d 1235 (11th Cir. 1984). One such limitation is set forth in Mississippi Code Section 47-5-193, which provided:

> It is unlawful for any officer or employee of the department, or any county sheriff's department, or any private correctional facility in this state in which offenders are confined or for any other person to furnish, attempt to furnish, or assist in furnishing to any offender confined in this state any weapon, deadly weapon, unauthorized electronic devise or contraband item. It is unlawful for any person to take, attempt to take, or assist in taking any

---

[35] Fulgham was incarcerated in August of 2004 on a charge of capital murder. She was subsequently convicted and sentenced to death.

10

weapon, deadly weapon, unauthorized electronic device or contraband item on property belonging to the department which is occupied or used by offenders, except as authorized by law.

Miss. Code Ann. § 47-5-193 (Rev. 2004).[36]

¶20.   Fulgham challenges this statute as being unconstitutionally vague. Specifically, Fulgham argues that the phrase "unauthorized electronic device" is not defined in the statute, and therefore the statute fails adequately to provide fair notice of the conduct that is prohibited. The majority correctly points out that "[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." ***Kolender v. Lawson***, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). In applying this test to the language of the statute, logic tells us that a "cell phone" and "cell-phone charger" are "unauthorized electronic devices" for inmate use.

¶21.   While "unauthorized electronic device" is not specifically defined in the statute, ordinary people can understand that a cell phone and cell-phone charger are electronic devices. Further, as incarceration necessarily entails limitations on an inmate's right to possess property, "unauthorized" necessarily would include anything that is not specifically authorized. ***Harris***, 735 F. 2d 1235. In light of the facts in this case, it would be illogical to reason that the word "unauthorized" does not encompass the meaning "not specifically

---

[36] This statute has since been revised. *See* Miss. Code Ann. § 45-5-193 (Supp. 2010).

authorized." Thus, the phrase "unauthorized electronic device," implies that any electronic device that is not specifically authorized for inmate use is prohibited.

¶22.    In this case, Fulgham has provided no evidence that she was ever authorized to possess, use, or furnish to another, a cell phone and cell-phone charger while in prison. In my view, the phrase "unauthorized electronic device," means that any electronic device not specifically authorized for inmate use is prohibited. Accordingly, I find  Mississippi Code Section 47-5-193 (Rev. 2004), to be constitutional and would affirm Fulgham's guilty plea.

**RANDOLPH, CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶23.    I agree that we should reverse the trial judge's denial of post-conviction relief. However, because the statute is irreparably vague under any application, I would grant Fulgham's petition for post-conviction relief and reverse her conviction on the count she challenges.  Fulgham presents a question of law that can and should be decided by this Court; therefore, I respectfully concur in part and dissent in part.

¶24.    It is true that the United States Supreme Court has said that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *U.S. v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975).  However, when a statute is so vague that it provides no standard at all,  the defendant's conduct, in the absence of a clearly defined and understandable standard, is immaterial.  *U.S. v. Williams*, 553 U.S. 285, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). Thus, an as-applied analysis is unnecessary, because "[i]f on its face the challenged provision

12

is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it." ***Lanzetta v. New Jersey***, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939) (citations omitted).

¶25.  The Mississippi statute under which Fulgham was prosecuted, Mississippi Code Section 47-5-193 (Rev. 2004), fails to comply with due process requirements.  *See* U.S. Const. amend. XIV; Miss. Const. art. 3, § 14.  The phrase in question, "unauthorized electronic device," is so inherently indeterminate that it provides neither minimum standards of enforcement nor "definite warning as to the proscribed conduct."  ***Nichols v. City of Gulfport***, 589 So. 2d 1280, 1282 (Miss. 1991) (citations omitted).  Hundreds of thousands of products can be described as "electronic devices," and in this instance the term is statutorily limited only by the adjective "unauthorized."  The question that logically follows is, of course, "Unauthorized by whom?"  The statute leaves the courts, and worse, the public, to wonder who is vested with the authority to declare a device "unauthorized."  An "offender confined in this state" may be subject to a plethora of authorities, including the courts, the legislature, local governments, the Mississippi Department of Corrections, sheriffs, and private correctional enterprises, to name some of them.  In addition, federal prisoners may be temporarily confined in Mississippi jails, and some of our correctional facilities are run by private entities.  Without specific legislative guidance, this Court cannot divine under whose authority an inmate's possession of these nondescript and multitudinous devices is regulated, and "[w]e are not about the business of legislating."  ***Champluvier v. State***, 942 So. 2d 145, 154 (Miss. 2006).  The extremely broad term "electronic devices" can encompass everything from a secondhand toaster to the Hubble Space Telescope.  Surely our legislature

13

can be more specific.  So can we.  But that is not our province; it is the legislature's.  *See* Miss. Const. art. 1, §§ 1, 2 (providing for separation of governmental powers).

¶26.    The plurality holds that "the only reasonable interpretation is that the entity having custody of the inmate determines what is 'unauthorized.'" Plur. Op. n.34.  However, even if the statute could be read to mean that the Oktibbeha County Sheriff's Department and/or the Mississippi Department of Corrections have been given the authority to define criminal conduct, this would constitute an unconstitutional delegation of legislative authority.  "[T]he authority to define crimes and provide the punishment therefor is vested exclusively in the Legislature, and it may not delegate that power expressly or by implication nor may an administrative agency enlarge the criminal liability of the statute." *State v. Russell*, 358 So. 2d 409, 411-12 (Miss. 1978) (citing *Howell v. State*, 300 So. 2d 774 (Miss. 1974)).  *See also* Miss. Const. art. 4, § 33 (vesting legislative power in the legislature); Miss. Const. art. 1, §§ 1-2 (providing separation of powers).  The Oktibbeha County Sheriff's Department is part of the executive branch of government, which constitutionally cannot define state crimes.

¶27.    Undeniably, it is appropriate that the duly elected or appointed authorities who operate prisons and jails be permitted to promulgate and enforce reasonable restrictions – consistent with applicable law and considerations of safety, security, hygiene, and health – upon the kinds of things that cannot be possessed by incarcerated persons, or provided to them by others.  What those authorities cannot do, however, is *make it a crime* for an incarcerated person to possess a particular thing, or for another person to make such a thing available to an incarcerated person.  To confer upon a sheriff or other peace officer, or upon a state corrections official, or any other person or group, *the power to criminalize* the possession or

14

provision of a certain thing, or kind of thing, by allowing him or them to designate that thing as *unauthorized*, is, without question, an unconstitutional delegation of a power that belongs solely to the legislature. The time-honored constitutional doctrine of separation of powers clearly proscribes such a delegation of authority. Miss. Const. art. 1, §§ 1-2.

¶28.   The plurality remands for an evidentiary hearing, but there can be no extrinsic evidence that would, or can, cure the statutory defect. Our concern is with the language of the statute in issue, Mississippi Code Section 47-5-193 (Rev. 2004). "[T]he test is whether the *language* [of the statute in question] conveys sufficiently definite warning as to the proscribed conduct," ***Jordan v. De George***, 341 U.S. 223, 231, 71 S. Ct. 703, 95 L. Ed. 886 (1951) (emphasis added), not whether some extrinsic source could have provided sufficient notice to satisfy due process of law. Fulgham is presumed to be on notice of the language of the statute, not the rules and regulations governing certain correctional facilities. *See* ***McNeely v. State***, 277 So. 2d 435, 437 (Miss. 1973) ("all persons are presumed to know the law"). Therefore, even if the State were to produce some document from the Oktibbeha County Sheriff's Department which prohibited cell phones and chargers, it could not serve to fill in the gaps left by the legislature or provide law enforcement authorities with "definite standards to avoid arbitrary enforcement." Plur. Op. at ¶ 1.

¶29.   Notably, although of no consequence to the resolution of the present case, in 2006 and 2008 the legislature amended Section 47-5-193 specifically to add to that statute's list of forbidden items, *inter alia,* the very kinds of things the prosecution contended in this case came under the umbrella of "unauthorized electronic device[s]" at the time of the alleged offense, which predated either of the amendments. In addition to unauthorized electronic

15

devices, which remain statutorily undefined in Mississippi, the amended code section specifies ". . . cell phone, or any of its components or accessories to include . . . chargers . . . ." Miss. Code Ann. § 47-5-193 (Supp. 2010).

¶30.   The version of the statute in effect at the time alleged in the indictment – August 16, 2004 – did not include the words *cell phone* or *charger*.  What the statute did provide at that time, in pertinent part, was:

> It is unlawful for any . . . person to furnish, attempt to furnish, or assist in furnishing to any offender confined in this state any . . . unauthorized electronic device . . . .

Miss. Code Ann. § 47-5-193 (Rev. 2004).   The charge laid against Fulgham in the indictment, in pertinent part, avers that she:

> did unlawfully, wilfully, and feloniously, furnish to an inmate of the Oktibbeha County jail an unauthorized electronic device, to-wit: a cellular telephone and charger, contrary to the form of the statutes in such cases made and provided . . . .

¶31.   Mississippi Code Section 47-5-193 is cited in the caption at the top of the indictment, but not in the formal, charging portion of the document returned by the grand jury.  The indictment improperly exceeds the language of the statute by elaborating, as the statute did not do at that time – and, strictly speaking, does not do now – that the term *unauthorized electronic device* can mean "a cellular telephone and charger."  Significantly, a literal construction of the statute in its present form reveals that the legislature has made a distinction between *unauthorized electronic device* and *cell phone* and *chargers*. Miss. Code Ann. § 47-5-193 (Supp. 2010).

16

¶32.   If the amendments to the statute had been enacted and had taken effect prior to August 16, 2004, the indictment returned against Fulgham on July 25, 2005, could be read to have sufficiently charged her with having unlawfully furnished statutorily prohibited articles to an inmate of the Oktibbeha County jail.  The drafter of the indictment attempted to supply what the legislature had omitted from its original enactment, but did provide by means of its 2006 and 2008 amendments: specificity with regard to exactly what kinds of things cannot lawfully be taken into certain places of imprisonment.  But, alas, neither drafters of indictments nor appellate courts possess the constitutional authority to fill in the gaps in statutes that are hopelessly afflicted by unconstitutional vagueness.  That is a legislative function, not a prosecutorial function and not a judicial one.  The Mississippi Legislature rightly undertook that function by its remedial amendments of Section 47-5-193 in 2006 and 2008.  Though the statute stood in need of repair on August 16, 2004, the date of Fulgham's alleged violation of it, and though the drafter of the indictment presciently foresaw what the legislature later would determine the statute *ought* to say, from a constitutional standpoint it was hopelessly vague when the State sought to invoke it against Fulgham.

¶33.   Finally, from the plain language of the statute, it is questionable whether it even applies to Fulgham's alleged conduct.  Fulgham was indicted for "furnish[ing] to an *inmate* of the Oktibbeha County jail an unauthorized electronic device."  (Emphasis added.)  The statute clearly requires that the recipient be "any *offender* confined in this state."  Miss. Code Ann. § 47-5-193 (emphasis added).  An offender is defined as "any person *convicted* of a crime or offense under the laws and ordinances of the state and its political subdivisions." Miss. Code Ann. § 47-5-4 (c) (Rev. 2004) (emphasis added).  And, though not specifically

17

applicable to Section 47-5-193, the code elsewhere defines an inmate as "any person incarcerated within any state correctional facility." Miss. Code Ann. § 47-5-539 (c) (Rev. 2004). Likewise, Mississippi Code Section 47-5-703(a) (Rev. 2004) defines an inmate as

> [E]very person who at the time of the declaration of a prison system overcrowding state of emergency, or at any time during the continuation of a state of emergency, is incarcerated by the Mississippi Department of Corrections as a result of a commitment to the department, including persons committed to the department and incarcerated in local or county jails or other facilities authorized to house state inmates.

Moreover, the Interstate Corrections Compact defines an inmate as "a male or female offender who is committed, under sentence to or confined in, a penal or correctional institution." Miss. Code Ann. § 47-5-1351 (d) (Supp. 2010).

¶34. Clearly, there is a significant distinction between an inmate and an offender, and the person to whom Fulgham allegedly furnished the "unauthorized electronic devices" may not have been an "offender." Many people who have not been convicted of a crime may be incarcerated in a county jail, e.g., detainees awaiting trial, persons awaiting a civil commitment hearing, and persons incarcerated for civil contempt. Thus, on remand, the trial court should also determine whether the person to whom Fulgham furnished the cell phone and charger was an "offender," as defined by Mississippi Code Section 47-5-4.

¶35. Yet, as explained above, no evidentiary hearing could possibly save this conviction. The phrase "unauthorized electronic device" is so ambiguous that it cannot be said clearly to define criminal conduct. Because due process of law requires that portion of the statute in question be declared void for its vagueness, I would reverse and render.

18